OPINION
Plaintiff-appellant Julia Ellis appeals from the December 14, 1999, Judgment Entry of the Licking County Court of Common Pleas finding that plaintiff-appellant was not entitled to receive Workers' Compensation benefits and from the January 18, 2000, Judgment Entry of such court denying plaintiff-appellant's Motion for Judgment Notwithstanding the Verdict and in the Alternative Motion for New Trial.
 STATEMENT OF THE FACTS AND CASE
After the Industrial Commission of Ohio denied appellant the right to participate in the Workers' Compensation fund for the condition of herniated lumbar disc at L4-5, appellant, on September 2, 1998, filed a complaint against the Bureau of Workers' Compensation and Rockwell Heavy Vehicle Systems, Inc. Meritor Automotive, appellant's self-insured employer. Appellant filed a Notice of Appeal the same day. Appellee Meritor, on September 22, 1998, filed an answer to appellant's complaint. An answer was filed by the Bureau of Workers' Compensation and the Industrial Commission of Ohio on September 25, 1998. Subsequently, a jury trial commenced on December 13, 1999. The following evidence was adduced at trial. After working for approximately ten years as an electronic's technician at Newark Air Force Base, appellant Julia Ellis was hired by appellee Meritor as a machine operator in June of 1994. As a machine operator, appellant uses a hoist to load steel parts into large machines. At trial, appellant testified that, in September of 1996 she injured her lower back after lunging to keep her granddaughter from falling. Although appellant was employed by appellee at the time, appellant's injury was unrelated to her employment. When she could hardly get out of bed the next day, appellant went to see Dr. Donnard, her family doctor. However, after his treatment of appellant was unsuccessful, Dr. Donnard referred appellant to Dr. Meagher, a neurosurgeon, who ordered that an MRI be conducted on appellant. After reviewing appellant's test results, Dr. Meagher performed low back surgery on appellant on September 23, 1996, for a herniated lumbar disc at L4-5 right. Appellant then underwent rehabilitation during November and December of 1996 before returning to work without restrictions in mid-January of 1997. Once appellant returned to work, she had no problems performing her work activities although, at trial, appellant testified that she had charley horses in her lower leg and numbness in a couple of her toes. During trial, appellant testified that, on or about March 3, 1998, she suffered a work-related injury after being assigned to work on a new machine. Appellant specifically testified as follows when asked how her injury occurred: "Well, during the process, I had unloaded the part from the hoist to be able to bring it back and pivot, and I don't know if I had done it too fast or what, but it actually took off. Because I would bring it around to set it down. It actually just kept going with me. There was a whole stack of finished parts here and I had in the past seen where they have crashed and fell and scrapped out parts but my first instinct was to jerk it back to stop it. And it was going to cause damage. And that's what I did."
Trial Transcript at 26. Appellant further testified that she then felt a pain in her lower back. Since she believed that she had just pulled her back and that "it would work itself out," appellant took some Tylenol and finished her shift for the day without reporting the incident to anyone. Trial Transcript at 27. However, the next day appellant's pain became more severe and started radiating down her leg. After appellant reported her injury to her supervisor, she was taken to the nurse's station and an accident report form was completed. The next day, appellant, who was having lower back pain, pain in her upper leg and knee pain, went to see Dr. Donnard, her family doctor. Dr. Donnard took appellant off work and put her on steroids. In addition, appellant and Dr. Donnard jointly completed a Notice of Claim form describing the incident of March 3, 1998. After being off from work for approximately two weeks, appellant returned to work on light duty for three weeks. During such time, appellant "developed a lot of problems with hurting." Trial Transcript at 32. Appellant, who ceased working on or about April 2, 1998, was then referred to Dr. Meagher, a neurosurgeon, by Dr. Donnard. Before being evaluated by Dr. Meagher on April 15, 1998, appellant had another MRI conducted. At the time she went to see Dr. Meagher, appellant, who was suffering from intense pain, could hardly work and was unable to drive. When she went to her appointment with Dr. Meagher, appellant took her recently completed MRI films with her so that Dr. Meagher could review the same. In addition to reviewing the films, Dr. Meagher conducted a physical evaluation of appellant. Following his evaluation, Dr. Meagher told appellant that she had a herniated disc at L4-5 and arranged for appellant to have a series of three epidural steroid shots. The shots were administered a week apart. Following the third shot, appellant "started feeling less pressure, less hurt" and was able to get around better. Trial Transcript at 36. Within two weeks of the third shot, appellant was able to drive again. When she returned to her former job with appellee on July 20, 1998, appellant had no pain in her back or down her leg. At trial, appellant testified that she did not have any recurring problems with her back and leg since returning to work and that she had not missed any work as a result of her back and leg problem. As of the date of the trial, appellant was still working for appellee. At trial, appellant presented the videotaped testimony of Dr. Meagher in support of her workers' compensation claim. Dr. Meagher testified that he first saw appellant on September 10, 1996, at which time he recommended an MRI of appellant's lumbar spine. Based on the MRI, which was performed the next day, Dr. Meagher diagnosed a "herniated disc at the L4-L5 level between the 4th and the 5th lumbar vertebrae and a right L5 radiculopathy." Deposition of Dr. Meagher at 11. For such reason, Dr. Meagher performed surgery on appellant. According to Dr. Meagher, during the course of her follow-up care, appellant did not show any signs or symptoms of a herniated disc at the L4-L5 level in her lower back. Appellant, however, did complain of cramping in her calf, of twinges in her back and of numbness in her toes. Dr. Meagher testified that he also saw appellant in April of 1998 after her work injury. The doctor testified that a repeat MRI done in March of 1998 showed "a recurrent disc herniation at L4-5 that was more central than lateral. Her previous disc had been lateral, more laterally placed." Deposition of Dr. Meagher at 20. After comparing the results of appellant's 1996 and 1998 MRIs, Dr. Meagher determined that appellant "had suffered a recurrent disc herniation" which, he testified, meant that "it was a new disc herniation at the same level." Deposition of Dr. Meagher at 23. He further testified that he did not believe that there was a recurrent herniation until after appellant's March 3, 1998, injury since "[s]he [appellant] was back to work and she didn't complain of the severe radicular leg pain again until after her injury at work. And we had a second MRI that was done that showed a disc herniation and that disc herniation was not in the same location as her previous disc herniation by report." Deposition of Dr. Meagher at 29. Dr. Meagher, who opined that appellant's herniated disc at L4-L5 was directly related to her March 3, 1998, injury at work, also testified that appellant's previous herniated disc at the L4-5 level made her more susceptible to reinjury. The sole witness to testify on behalf of appellee was Dr. Gerald Steiman, a board certified neurologist, who testified via videotaped deposition. Dr. Steiman testified that he reviewed appellant's medical records and reports, appellant's sworn deposition testimony regarding the March 3, 1998, incident and regarding any symptomatology that appellant was suffering from at the time her deposition was taken, and the reports stemming from appellant's two MRIs. Based on all of the above, Dr. Steiman opined that appellant "did not sustain a new and distinct injury as of March 3rd, 1998." Deposition of Dr. Steiman at 15. Rather, Dr. Steiman agreed that "what we have in this case is not a new injury and not an aggravation but a flare-up . . ." Deposition of Dr. Steiman at 62-63. At the conclusion of Dr. Steiman's testimony, appellant moved for a directed verdict. While the trial court asked that the matter be delayed until the jury began deliberating, the trial court subsequently overruled appellant's motion for a directed verdict. At the conclusion of deliberations, the jury, on December 13, 1999, returned with a verdict adverse to appellant. The jury specifically found that appellant was not entitled to receive workers' compensation benefits. The jury's verdict was memorialized in a Judgment Entry filed on December 14, 1999. Thereafter, on December 28, 1999, appellant filed a Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial. A response to appellant's motion was filed by appellee on January 6, 2000. Pursuant to a Judgment Entry filed on January 18, 2000, the trial court overruled appellant's motion. It is from the December 14, 1999, and January 18, 2000, Judgment Entries that appellant now prosecutes her appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY DENIED PLAINTIFF-APPELLANT'S MOTION FOR DIRECTED VERDICT.
 ASSIGNMENT OF ERROR 2 THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY FAILED TO GIVE PROPOSED INSTRUCTIONS OFFERED BY APPELLANT, AND IMPROPERLY INSTRUCTED THE JURY THAT THE PLAINTIFF WAS NOT ENTITLED TO PARTICIPATE IN WORKERS' COMPENSATION BENEFITS FOR SIMPLY A REOCCURRENCE OF A PRE-EXISTING CONDITION.
 ASSIGNMENT OF ERROR 3 THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY DENIED PLAINTIFF'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND ALTERNATIVE MOTION FOR NEW TRIAL.
 ASSIGNMENT OF ERROR 4 OVER OBJECTION BY APPELLANT, THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY PERMITTED DR. GERALD STEIMAN TO OFFER OPINION TESTIMONY ON THE ULTIMATE FACTUAL ISSUE IN THE CASE.
For purposes of clarity, we shall address appellant's assignments of error out of sequence.
 II
Appellant, in her second assignment of error, contends that the trial court erred in instructing the jury. Appellant specifically maintains that the trial court erred in failing to give appellant's proposed jury instruction pertaining to an employer's assumption of risk with regard to pre-existing conditions. Appellant also argues that the trial court improperly instructed the jury that appellant was not entitled to participate in the Workers' Compensation fund for "simply a reoccurrence of a pre-existing condition." It is within the trial court's discretion to refuse to admit proposed jury instructions which are either redundant or immaterial to the case. Bostic v. Connor (1988), 37 Ohio St.3d 144. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217 . We must look at the totality of circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. A reviewing court, in determining whether the errors in a jury instruction constitute reversible error, must consider the jury charge as a whole and must determine whether the charge probably misled the jury in such a manner that the complaining party's substantial rights were materially affected. Becker v. Lake County Memorial Hosp. West (1990),53 Ohio St.3d 202, 208. As is stated above, appellant argues that the trial court improperly instructed the jury. Appellant specifically points to the following instruction that was given to the jury over appellant's objection: "The plaintiff is not entitled to benefits for a pre-existing condition which has not been aggravated by an incident, nor for simply a reoccurrence of a pre-existing condition, nor for a condition resulting from other causes not related to the incident of March 3, 1998." (Emphasis added). Appellant argued on the record that such instruction" gives a misimpression that the — that a recurrence and preexisting could not be allowed unless — even if it was causally related to the work-related incident. And that was my concern with that instruction, was that it did — it excluded a recurrence of a preexisting injury even if it was causally related to the incident alleged." Trial Transcript at 90. We find that the trial court's decision to give the above instruction constituted reversible error since, considering the jury charge as a whole, the charge probably misled the jury in such a manner that appellant's substantial rights were materially prejudiced. The trial court, by instructing the jury that appellant was not entitled to workers' compensation benefits for "simply a reoccurrence of a pre-existing condition," could have led the jury to believe that they should find against appellant even if they concluded that, as a direct result of the March 3, 1998, incident, appellant had suffered a re-herniated disc at L4-5. As appellant notes in her brief, "the misdirection of this instruction was compounded by the fact that much of the claimant's evidence was based upon the theory that there was a reoccurrence of a pre-existing herniated disc at L4-L5." The position of appellant is supported by an examination of Dr. Meagher's testimony: Q. . . . did you make a diagnosis with regard, that is, April the 15th, and after the MRI was received and reviewed, did you make a diagnosis with regard to Mrs. Ellis? Dr. Meagher: Yes sir. Q. And what was that? Dr. Meagher: I made a diagnosis that she had suffered a recurrent disc herniation. Q. And by recurrent what do you mean? Dr. Meagher: Basically that it was a new disc herniation at the same level. Q. And by same level, what do you mean? Dr. Meagher: The same level that she previously been operated upon at. Video deposition, p. 23 It appears to us that Dr. Meagher's use of the word "recurrent", to describe a re-injury to the L4-L5 area caused by an incident at work, is not the same use of the word recommended in the AMA Guides to Evaluation of Permanent Impairment, Fourth Edition. A "recurrence" in the AMA Guides is described as follows: "A recurrence requires no identifiable incident as a trigger to the medical condition in question: rather the patient has a resumption of symptoms or signs that can be related to the previously existing medical condition or injury." We conclude that the usage of the word recurrent by Dr. Meagher in combination with the jury instruction given was likely to cause confusion for the jury, because the jury instruction on recurrence seems more in line with the AMA Guides definition. As is stated above, appellant also challenges the trial court's failure, over appellant's objection, to instruct the jury as to an employer's assumption of risk with regard to pre-existing conditions. Appellant specifically had requested that the trial court instruct the jury as follows: "In Ohio an employer takes their employees as they find them and assume the risk of having an employee's pre-existing physical condition making that employee more susceptible to injury than a perfectly healthy person." Appellant had requested that such an instruction be given based upon Dr. Meagher's testimony that the fact that appellant had a previous herniated disc at L4-L5 made her more susceptible to reinjury at that level. See Transcript of Dr. Meagher at 36-37. The trial court, however, declined to give such an instruction. We find that the trial court's failure to give appellant's proposed instruction constituted reversible error. The instruction requested by appellant was a correct statement of the law. See Hamilton v. Keller (1967) 11 Ohio App.2d 121 and 3 OJI Section 365.13. In addition, we find that Dr. Meagher's testimony supported such an instruction. For the foregoing reasons, appellant's second assignment of error is sustained.
 IV
In her fourth and final assignment of error, appellant argues that trial court erred in permitting Dr. Steiman, over appellant's objection, to testify as to his opinion regarding the cause of appellant's medical problems. We, however, disagree. "The admissibility of expert testimony is committed to the sound discretion of the trial court and will provide a basis for reversal on appeal only upon abuse of discretion which amounts to prejudicial error." Wells v. Miami Valley Hosp. (1993),90 Ohio App.3d 840, 856. In order to find an abuse of discretion we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See Blakemore, supra. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. In the case sub judice, Dr. Steiman never physically examined appellant. However, during his videotaped deposition, Dr. Steiman was asked, based upon his review of appellant's medical records, for his opinion as to whether appellant "sustained any type of new and distinct injury either by way of causation or aggravation on March 3rd, 1998." Deposition of Dr. Steiman at 14. At the time of the deposition, appellant objected on the record to such question. After the trial court later overruled her objection, appellant placed the following objection on the record: "It's a hypothetical question was asked and Dr. Steiman was assuming the information contained in certain reports. The basis for my objection is several of those records are not in evidence, two of them. There's an MRI that's referred to in his testimony as having taken place after March, 1998. That was not in the evidence that he reviewed. And, therefore, he could not have considered it. And it's not an exhibit in his deposition testimony." Trial Transcript at 6. However, after appellee's counsel advised the trial court that Dr. Steiman had, in fact, had the opportunity to review both MRIs, the trial court overruled appellant's objection. Appellant now claims that the trial court erred in permitting Dr. Steiman to testify "about a report he did not personally create, was not apart (sic) of the records he reviewed, and was not available during his testimony." We find that the trial court did not err in admitting Dr. Steiman's opinion testimony. Dr. Steiman, during his deposition, testified that he had the opportunity to review the reports from both of appellant's MRIs before giving his opinion. The following is an excerpt from Dr. Steiman's videotaped testimony: Q. Dr. Steiman, have you had occasion to review medical records and reports that were provided to you by our office pertaining to the Plaintiff, Julia Ellis? A. Yes. Q. Specifically, have you had occasion to review the records and reports of Dr. Meagher? A. Yes. Q. And have you also had the occasion to review the records and reports from the hospitals where Ms. Ellis was hospitalized in conjunction with a back surgery in 1996? A. Yes, I'm aware she had back surgery in September of `96. Q. You also had occasion to read and review Miss Ellis' sworn deposition testimony regarding events that she alleges occurred on March 3rd, 1998? A. Yes. Q. And have you also had occasion to read and review her deposition testimony regarding any symptomatology that she was suffering from at the time her deposition was taken? A. Yes. Q. Doctor, is it your understanding from the records that you reviewed that an MRI was performed in 1996 and that this MRI revealed the existence of a herniated disc at the L4-L5 level? A. Yes. Q. And is it also your understanding that surgery was performed on 1996 in an effort to correct the herniated disc at the L4-L5 level? A. Yes. Q. Is it also your understanding that Ms. Ellis saw Dr. Meagher in 1997 after the surgery and that the records would indicate that there were some complaints of pain or charley horses in her back and also some numbness in her foot? A. Yes. Q. Is it also your understanding, based upon your review of the records and the sworn deposition testimony, that after March 3rd, 1998, a second MRI was performed? A. Yes. Q. Did you have occasion to review the reports stemming from the second MRI? A. Yes. Q. And, Doctor, is it your understanding that the second MRI that was performed after March 3rd, 1998, again showed the existence of a herniated disc at the L4-L5 LEVEL? A. Yes. Deposition of Dr. Steiman at 12-14. Thus, Dr. Steiman, prior to opining that appellant did not sustain a new injury, had the opportunity to review all relevant records relating to appellant, including the two MRI reports. Appellant further argues that Dr. Steiman should not have been permitted to give his opinion as to the cause of appellant's medical problems since Dr. Steiman, in arriving at his opinion, assumed medical findings that were unsupported by Dr. Meagher's testimony. Appellant, in his brief, specifically argues as follows: Although Mr. Steiman said that he assumed Dr. Meagher's findings and the findings of the recent [1998] MRI, Mr. Meagher's testimony belies that statement. Indeed, in his testimony Dr. Meagher explains that not only does the MRI report show new findings as reported by the radiologist, but also upon his own personal review of the film, . . . Clearly, Dr. Steiman could not have assumed either the findings of the March 30, 1998, MRI report, or Dr. Meagher's personal findings upon review of that film, and concluded that "there were no new findings," . . . or, that "it was in the same spot as the original problems . . .'
While Dr. Steiman's direct testimony was presented to the jury at trial, appellant chose not to present his cross-examination testimony of Dr. Steiman. We concur with appellee that had appellant wished to draw the jury's attention to any shortcomings in Dr. Steiman's testimony, she could have presented the cross-examination testimony of Dr. Steiman. Appellant, however, chose not to do so. In short, we find that the trial court did not abuse its discretion in permitting Dr. Steiman to testify at trial regarding the cause of appellant's medical problems. Such decision was not arbitrary, unconscionable or unreasonable. Appellant's fourth assignment of error is, therefore, overruled.
 I, III
Based on this court's disposition with respect to appellant's second and fourth assignments of error, appellant's first and third assignments of error are moot. The judgment of the Licking County Court of Common Pleas is vacated. This matter is remanded to the trial court for a new trial.
Edwards, J. Gwin, P.J. concurs.
Hoffman, J. concurs and dissents in part.