BECKER, APPELLANT, *v.* LAKE COUNTY MEMORIAL HOSPITAL WEST, APPELLEE.

[Cite as Becker *v.* Lake Cty. Mem. Hosp. West (1990),
53 Ohio St. 3d 202.]

(No. 89-433—Submitted March 7, 1990—Decided August 29, 1990.)

BROGAN, J. For her proposition of law, appellant asserts that *res ipsa loquitur* may apply where two persons, acting in concert, are jointly or concurrently in exclusive control of the instrumentality that caused the injury. In Ohio, the rule of *res ipsa loquitur* is not a rule of substantive law but is a rule of evidence which permits the jury, but not the court in a jury trial, to draw an inference of negligence where "* * * the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant[,] and that * * * the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. * * *" *Hake* v. *Wiedemann Brewing Co.* (1970), 23 Ohio St. 2d 65, 66-67, 52 O.O. 2d 366, 367, 262 N.E. 2d 703, 705. See, also, *Glowacki* v. *North Western Ohio Ry. & Power Co.* (1927), 116 Ohio St. 451, 157 N.E. 21, paragraph one of the syllabus. The weight of the inference as well as the weight of the explanation offered to meet the inference is for the determination of the jury in a jury trial. *Id.* at paragraph three of the syllabus. "* * * Whether sufficient evidence has been adduced at trial to warrant application of the rule is a question of law to be determined initially by the trial court, subject to review upon appeal. It is prejudicial error for the trial court to direct a verdict for defendant at the close of plaintiff's evidence where the evidence presented warrants the application of the rule. * * *" *Hake, supra,* at 67, 52 O.O. 2d at 367, 362 N.E. 2d at 705; *Hiell* v. *Golco Oil Co.* (1940), 137 Ohio St. 180, 17 O.O. 544, 28 N.E. 2d 561.

Early cases refused to apply *res ipsa loquitur* to multiple defendants because of the strict interpretation of

*Spero & Rosenfield Co., L.P.A.,* and *Keith E. Spero,* for appellant.

*Reminger & Reminger Co., L.P.A.,* and *Nicholas D. Satullo,* for appellee.

the exclusive-control requirement. This literal application of the word "exclusive" led a Rhode Island court to deny recovery to a customer injured in a store when a chair collapsed because, at the time of the injury, the customer, not the store, had "exclusive control" of the chair. *Kilgore* v. *Shepard Co.* (1932), 52 R.I. 151, 158 A. 720.

Several courts began to accept the concept of "concurrent control." This concept was first recognized in *Smith* v. *Claude Neon Lights, Inc.* (N.J. App. 1933), 164 A. 423, where a New Jersey court held that *res ipsa loquitur* could be maintained against both a landowner and a sign company when a small sign advertising the company fell off the landowner's larger sign and injured a passerby. The court reasoned that they shared control and duty of both parties to the plaintiff was sufficient to invoke the doctrine.

"The fallacy of the 'exclusive control' test is seen in many situations where the doctrine is unhesitatingly applied despite absence of 'control.' Where for instance the defendant's duty of care with respect to the injuring agency is (as to the plaintiff) nondelegable, the fact that control may have been in an independent contractor will not preclude the application of the doctrine." 4 Harper, James & Gray, The Law of Torts (2 Ed. 1986) 47, Section 19.7. See, also, *id.* at fn. 6, and cases cited therein.

In *Shields* v. *King* (1973), 40 Ohio App. 2d 77, 69 O.O. 2d 57, 317 N.E. 2d 922, the Hamilton County Court of Appeals held that "[t]he doctrine of *res ipsa loquitur* is not restricted to factual situations involving a single defendant, but may be applied to factual situations involving two or more defendants who, as a result of concerted actions, were in collective and concurrent control of the only instrumentalities which, the evidence establishes, caused injury." *Id.* at paragraph one of the syllabus.

In *Ybarra* v. *Spangard* (1945), 25 Cal. 2d 501, 154 P. 2d 687, the Supreme Court of California held that where the patient submitted himself to the care and custody of doctors and nurses for an appendectomy, and while under anesthetic the patient received serious injuries to his arm and shoulder, the patient was entitled to the aid of the doctrine of *res ipsa loquitur*, and was not required to show which doctor or nurse was responsible for his injury.

Chief Justice Gibson summarized the arguments of the various defendants and the court's ultimate holding:

"The argument of defendants is simply that plaintiff has not shown an injury caused by an instrumentality under a defendant's control, because he has not shown which of the several instrumentalities that he came in contact with while in the hospital caused the injury; and he has not shown that any one defendant or his servants had exclusive control over any particular instrumentality. Defendants assert that some of them were not the employees of other defendants, that some did not stand in any permanent relationship from which liability in tort would follow, and that in view of the nature of the injury, the number of defendants and the different functions performed by each, they could not all be liable for the wrong, if any.

"We have no doubt that in a modern hospital a patient is quite likely to come under the care of a number of persons in different types of contractual and other relationships with each other. For example, in the present case it appears that Drs. Smith, Spangard and Tilley were physicians or surgeons commonly placed in the legal category of independent contractors; and Dr. Reser, the anesthetist, and defendant

Thompson, the special nurse, were employees of Dr. Swift and not of the other doctors. But we do not believe that either the number or relationship of the defendants alone determines whether the doctrine of res ipsa loquitur applies. Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard. * * *

"* * *

"We do not at this time undertake to state the extent to which the reasoning of this case may be applied to other situations in which the doctrine of res ipsa loquitur is invoked. *We merely hold that where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct.*" (Emphasis added.) *Id.* at 690-691.

In *Kolakowski* v. *Voris* (Ill. 1981), 415 N.E. 2d 397, the Supreme Court of Illinois held that when the patient submitted himself to the care of a hospital and its staff and was rendered unconscious for the purpose of surgery performed by independent contracting surgeons, the control necessary under *res ipsa loquitur* was met, and the burden shifted to the hospital to dispel the inference that it exercised control warranting the application of the doctrine. Justice Moran noted, at 401:

"In the present case, the plaintiff, at the time of the alleged injury, was placed in the care and custody of the named defendants. Since plaintiff was under a general anesthetic during surgery, he was unable to determine the cause of his injuries; the cause was

within the exclusive knowledge of the defendants. It is under these circumstances that a plaintiff's only recourse is to rely on the doctrine of *res ipsa loquitur*. Under the theory advanced by defendant, whenever a doctor acting in the capacity of an independent contractor participates in surgery in defendant's hospital, the element of exclusive control by the hospital ceases. We believe this approach is manifestly unfair because the physicians and hospital, at the time of surgery, each owed an independent duty to the patient and exercised concurrent control over the operation and equipment." See, also, *Fogal* v. *Genesee Hosp.* (1973), 41 App. Div. 2d 468, 344 N.Y. Supp. 2d 552.

If the plaintiff has made out a *res ipsa loquitur* case, he succeeds in avoiding a dismissal or a directed verdict at the close of his own case. Prosser, The Procedural Effect of Res Ipsa Loquitur (1936), 20 Minn. L. Rev. 241, 243-244.

In *Fink* v. *New York Central RR. Co.* (1944), 144 Ohio St. 1, 28 O.O. 550, 56 N.E. 2d 456, this court held that "[t]he trial court, in a jury trial, in a case which calls for the application of the rule of *res ipsa loquitur*, is without authority to declare, as a matter of law, that the inference of negligence which the jury is permitted to draw, has been rebutted or destroyed by an explanation of the circumstances offered by the defendant, and such action on the part of the trial court is an invasion of the province of the jury." *Id.* at paragraph three of the syllabus.

In the case before us, Lenkauskas testified as upon cross-examination that the patient's arms are usually restrained for septoplasty operations by a "lift sheet" technique and he assumed that the nurses had done so in regard to Becker. He admitted that this precaution was usually employed

at Lake County Memorial Hospital West and the majority of hospitals. He stated he did not notice that Becker had not been restrained prior to the surgery. He stated that if a patient objects to his arms being restrained by the lift sheet and the patient is otherwise alert and responsive, he usually requests the nurses to loosen the sheet. He stated the usual practice was to restrain the patient's arms unless he tells the nurses otherwise. He testified he retains the discretion to order the restraint removed.

Lenkauskas explained that he had been performing this procedure for some thirty years and had never had a patient react to the cocaine anesthetic in the manner Becker did. He admitted cocaine may produce toxic reactions such as convulsions and seizures.

Dr. Richard Paley, an experienced otolaryngologist, testified by videotape deposition that he had practiced in several Cleveland-area hospitals, and that he regularly performs septoplasty surgery. He stated that the type of injury Karen Becker sustained does not occur ordinarily in the absence of negligence. He also testified that both Lenkauskas and the hospital owed a duty of care to Becker to prevent such an injury.

Paley further testified that the hospital deviated from minimal medical standards in failing to provide rules or regulations which would mandate arm restraints when the surgical patient is administered cocaine since it is known to cause untoward or toxic reactions in some patients and can produce convulsions and seizures of the type experienced by Becker. He further testified that had Becker's arms been properly restrained by the lift-sheet technique, she probably would not have sustained her injury.

Despite Lenkauskas's testimony, Paley made it clear it was the hospital's responsibility to ensure that a surgical patient receiving cocaine will not injure himself in the event of a toxic reaction to the local anesthesia. The jury could have concluded that both Lenkauskas and the hospital owed an independent duty to the patient and exercised concurrent control over the instrumentality which injured the appellant.

On cross-examination, Paley admitted he was not an expert in nursing standards or procedures. In reversing the judgment of the trial court, the court of appeals held the trial court erred in failing to grant the hospital's motion for a directed verdict because Paley admitted he did not consider himself an expert on nursing standards and there was no expert testimony that the violation of any such duty proximately caused Becker's injuries.

No objection was lodged by counsel for the hospital to the competency of Paley to testify. No motion to strike was made after Paley's deposition testimony was shown to the jury. In considering a motion for a directed verdict, a court does not weigh the evidence or test the credibility of the witnesses. Such a motion "* * * is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. * * *" *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 68, 23 O.O. 3d 115, 116, 430 N.E. 2d 935, 938.

It has been held that a hospital has a duty in caring for a patient to take steps to prevent the patient from injuring himself under circumstances where the danger is apparent. *Burks* v. *Christ Hosp.* (1969), 19 Ohio St. 2d 128, 48 O.O. 2d 117, 249 N.E. 2d 829.

We conclude that the trial judge

properly instructed the jury that it could infer negligence by both Lenkauskas and the hospital if it found that all the elements for the application of the doctrine were proved by the plaintiff. The court properly instructed the jury that the doctrine of *res ipsa loquitur* is not restricted to fact situations involving a single defendant but may be applied to multiple defendants who collectively have exclusive control of the instrumentality, procedure or occurrence that caused the injury.

Dangers which are apparent to physicians may not be as apparent to nurses. Indeed, in this case, neither nurse was aware of the potential of cocaine to produce convulsions and seizures. In promulgating rules for the safety of its patients, hospital administrators look to guidance from medical staff as well as nurses. Paley merely testified that the failure of the hospital to protect its surgical patients who receive cocaine from injuring themselves was deviation from minimal medical standards. He testified that in the hospital where he practices the patient's arms are routinely restrained during septoplasty operations to prevent injury from untoward reactions to cocaine. Lenkauskas himself testified it was the normal procedure in Lake County Memorial Hospital West to have the patient's arms restrained prior to septoplasty surgery, and indeed he thought Becker had been so restrained prior to her surgery by the hospital nurses. We cannot say the jury could come only to one conclusion upon the evidence submitted, and that conclusion was adverse to the plaintiff. The court of appeals erred in concluding to the contrary.

The court of appeals also found that the trial court erred in permitting Dr. Steven Combs, an orthopedic surgeon, to testify over objection that "there is a good possibility" that Becker would need future surgery as a result of her dislocated shoulder. Medical experts must render opinions based upon probabilities, not merely in terms of possibilities. *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 56 O.O. 2d 146, 272 N.E. 2d 97. Ordinarily, we would sustain the court of appeals on this issue. However, the extraordinary circumstances of this case bear further scrutiny.

Combs testified that Becker had a Hills-Sachs lesion as a result of her anterior shoulder dislocation. He stated that a Hills-Sachs lesion is like a compression fracture in the sense that it deforms the bone inward. He said Becker had a sixty-percent chance of re-dislocating her shoulder. He stated that if she again dislocates her shoulder he would recommend surgery. He stated the following in response to a question eliciting his opinion as to whether Becker would need future surgery:

"A. I believe with the subluxation ability she has now, okay, there a good possibility that she may need this, yes."

In effect, Combs testified that because of Becker's injury she would in the future probably again dislocate her shoulder and surgery would be necessary. The answer given by the witness must be considered in light of all of his testimony. See *Knotts* v. *Valocchi* (1963), 2 Ohio App. 2d 188, 31 O.O. 2d 282, 207 N.E. 2d 379.

The trial court is in the best position to evaluate the witness and his demeanor. A stale transcript will normally not portray the inflection or emphasis given to certain responses of the witness. In overruling the defense objection to Combs's opinion, quoted above, the trial judge may have concluded the witness was answering in an authoritative manner with emphasis on the word "yes." There was

evidence in the record to sustain the trial court's ruling on the admissibility of the expert's opinion.

In its final instruction to the jury, the court gave the following instruction:

"Now ladies and gentlemen, the defendant Lake County Memorial Hospital is the employer of various persons; nurses, pharmacists. And you have heard the testimony of the persons who were involved. They are also the employer. That is, it is also the employer of Nancy Fortunato, and the operating nurses who came into the room after the plaintiff began to lapse into her state as has been described. And as an employer, Lake County [M]emorial Hospital West is responsible for all the acts or omissions of its employees acting — that is, when those employees are acting within the scope of their employment.

"If you find by a greater weight of the evidence that a hospital employee or employees acting within the scope of his or her employment was negligent, then you will find that the hospital was, in fact, negligent.

"You must decide whether or not each hospital employee who was involved in this case, or that you have heard evidence about, was or was not in the scope of his or her employment at the time of any act or omission complained of.

"Since no one has denied that Nancy Fortunato or the hospital pharmacist, or the nurses who came into the operating room after Miss Becker began to thrash, were acting in the scope of their employment for the hospital, their acts or omissions which had been proved to you by the greater weight of the evidence, were the acts or omissions of the hospital."

Counsel for the hospital objected to the court's instruction because of its inclusion of the hospital pharmacist since there was no evidence presented by the plaintiff that any negligence of the pharmacist caused the plaintiff's injury. It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Hood* v. *New York, Chicago & St. Louis RR. Co.* (1957), 166 Ohio St. 529, 3 O.O. 2d 12, 144 N.E. 2d 104, paragraph four of the syllabus.

A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. *Ohio Farmers Ins. Co.* v. *Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph six of the syllabus; *Wagenheim* v. *Alexander Grant & Co.* (1983), 19 Ohio App. 3d 7, 19 OBR 71, 482 N.E. 2d 955.

Although we agree that the trial judge erred in including the pharmacist in the court's final instructions, we fail to see how this erroneous instruction could have misled the jury. The conduct of the pharmacist was not at issue in this trial. We determine the error to be harmless.

The judgment of the court of appeals is hereby reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., concurs in judgment only.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for SWEENEY, J.