JOURNAL ENTRY and OPINION.
 I. {¶ 1} Defendant-appellant Joseph Jones was indicted for one count of aggravated burglary (R.C. 2911.11) and one count of felonious assault (R.C. 2903.11). Following a jury trial, Jones was found not guilty of aggravated burglary and guilty of felonious assault. Jones appeals and brings three assignments of error. For the reasons set out below, we affirm.
 II. {¶ 2} Richard Carr, a resident in an apartment building located on East 121st Street and Forrest Avenue, testified that on the afternoon of December 27, 2000 he was beaten by Jones and another man. Carr testified that he was home that afternoon watching his three children. At around 3:00, Carr heard the doorbell ring and went to answer the common outside door of the apartment. Expecting to see his girlfriend, who usually arrived home around that time, Carr instead saw two men, whom he later identified as Jones and Antonio Christian. Carr stated that the men smelled like marijuana and that they looked high. They came to see a woman, a neighbor of Carr. Carr told them that he would tell her they were there, but that he could not let them in. Christian tried to push his way in but Carr held him up at the door. Christian then hit Carr, who hit back. Jones then hit Carr, who again hit back. Ultimately, the two gained control of Carr and beat him. A neighbor came out and yelled that he had called the police. Carr ran up the stairs and was followed by, he thinks, Christian. Carr locked the door to his apartment. Christian kicked through and again started fighting with Carr. Carr's girlfriend Latonya Goldsby testified that the wood near the lock "was broken off completely." Officer Anthony Carroll, who was called to the scene, also testified that the break was "fresh." Jones came up, saw the kids, and told Christian to get out of there. They then left. Goldsby and Carroll testified that they saw blood on the carpet right inside the doorway of the apartment. Carr was taken to a hospital and treated for multiple injuries, mostly to his head. Carr saw Jones a few times after the beating and did call the police. Finally, on May 25, 2001, Carr again saw Jones outside his apartment and Jones was arrested. He had apparently avoided arrest before.
 {¶ 3} On cross-examination, the defense brought forth evidence that showed that Carr had made reports of "two or three" black males assaulting him. He admitted that he does not recall much of what he said to people after the beating.
 {¶ 4} Goldsby testified that she learned who Jones was after Carr had pointed him out to her. She said that he had been in the neighborhood and that one day she confronted him. According to her, Jones said that he and his brother had just smoked some "wet," that they were both high, that he did not know that it escalated as far as it had and that if he had known there were kids in the house he would not have done anything. He also said that he saw his brother fighting Carr and so he jumped in to help his brother. Goldsby testified that her mother was there during the conversation.
 {¶ 5} Jones testified on behalf of himself. He admits to being at the apartment on the day in question. He stated that he was walking around with his brother William Earl Jones ("Earl"), who had just got out of jail the day before. Earl saw a woman he knew and they planned to meet later that day. Jones said that, as they approached the woman's apartment building, he saw Carr entering the building at the same time. As Carr unlocked the door, Earl started asking him about a woman who lived upstairs. Jones told Earl to leave him alone. Jones started walking away when he heard some fighting. He turned around and saw Carr on top of Earl. Jones approached with the intention of simply getting Carr off Earl. When he grabbed Carr by the shoulder, Carr spun around and punched him. They then began to fight. Jones says that he never touched Carr when Carr hit the floor and that he never entered Carr's apartment. Jones also said that he and his brother look very much alike and that some people think that they are twins. He also said that Antonio Christian was not involved; he does not even know Christian.
 III. First Assignment of Error {¶ 6} "Assignment of Error I: Joseph Jones was deprived of his liberty without due process of law by his conviction for felonious assault, as it was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 A. {¶ 7} Jones argues that there was insufficient evidence to show that he was guilty of all the essential elements of felonious assault. Specifically, he argues that there was insufficient evidence to show that he caused "serious physical harm" as defined by the statute.
 B. 1. {¶ 8} The essential elements of the crime charged here, felonious assault, are found in R.C. 2903.11, which states in relevant part that "[n]o person shall knowingly do * * * the following: * * * [c]ause serious physical harm to another[.]" As defined in R.C. 2901.01(A)(5), "serious physical harm" is any of the following:
 {¶ 9} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 10} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 11} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 12} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 13} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 2. {¶ 14} The Supreme Court recently set forth the relevant standard of review. "When a defendant challenges the legal sufficiency of the state's evidence, `the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Herring (2002), 94 Ohio St.3d 246, 252, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319 (emphasis sic).
 {¶ 15} The question, therefore, is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found" beyond a reasonable doubt that Jones caused serious physical harm. Herring at 246, quoting Jackson,443 U.S. at 319 (emphasis sic). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 C. {¶ 16} We hold that a rational trier of fact could have found the essential element that Jones caused serious physical harm. As the state points out, Carr was diagnosed with multiple lip lacerations, multiple facial contusions, left scleral laceration, chest contusion and atrial fibrillation/flutter. He received stitches and spent forty-four hours in the hospital. "Where injuries to the victim are serious enough to cause him or her to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115 (citations omitted).
 {¶ 17} Therefore, we hold that the evidence — the injuries and the hospital stay — when viewed in a light most favorable to the state, could allow a rational trier of fact to find beyond a reasonable doubt that Jones caused Carr serious physical harm. Assignment of error number one is not well taken.
 IV. Second Assignment of Error {¶ 18} "Assignment of Error II: Joseph Jones was deprived of his constitutional right to a fair trial before a jury by the faulty jury instruction give to the jury."
 A. {¶ 19} Jones argues that the trial court improperly gave the jury an "acquittal first" instruction, which required the jury to find Jones not guilty of felonious assault before the jury could consider the lesser charge of aggravated assault. Jones argues that the "acquittal first" instruction could have prejudiced that jury's deliberations. Further, Jones concedes that defense counsel did not object to the jury instructions but urges this court to find plain error and reverse.
 B. {¶ 20} The relevant jury instructions, which followed the court's explanation of the law of aggravated burglary and felonious assault, are set out below:
 {¶ 21} "Now, if you find that the State proved beyond a reasonable doubt all the essential elements of any one or both of the offenses charged in the separate counts, your verdict must be guilty as to that offense or offenses according to your findings.
 {¶ 22} "If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of any one or both of the offenses charged in the separate counts in the indictment, your verdict must be not guilty as to such offense or offenses according to your finding.
 {¶ 23} "The charges set forth in each count in the indictment constitute separate and distinct matters, and you must consider each count and evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to the other count. The defendant may be guilty of any one or all of the offenses charged.
 {¶ 24} "Now, you've heard some testimony about a fight, which, if believed by you, you must further consider the offense of felonious assault (sic). If you find that the State proved beyond a reasonable doubt all of the essential elements of the offense of felonious assault, your verdict must be guilty as charged; however, if you find that the State failed to prove beyond a reasonable doubt all the essential elements of felonious assault, then your verdict must be not guilty of that offense and in that event, you will continue your deliberations to decide whether the State proved beyond a reasonable doubt all the essential elements of the lesser offense of aggravated assault. [Emphasis added.]
 {¶ 25} "For the purpose of this case, the offense of aggravated assault is distinguished from felonious assault by the presence of sudden passion or sudden fit of rage on the part of the defendant brought on by serious provocation occasioned by the victim.
 {¶ 26} "An aggravated assault therefore occurs when the defendant knowingly causes serious physical harm to another while under the influence of sudden passion or in a sudden rage either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force."
 {¶ 27} The court then defined the elements of aggravated assault. The court continued:
 {¶ 28} "If you find beyond a reasonable doubt that the State proved all the essential elements of felonious assault, but if you decide from all the evidence that the defendant acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by Richard Carr or provocation that was reasonably sufficient to incite the defendant into using deadly force, then your verdict must be guilty of aggravated assault.
 {¶ 29} "If you determine from all the evidence that the defendant did not act under the influence of sudden passion or in a sudden fit of rage brought on by the provocation just described, then your verdict must be guilty.
 {¶ 30} "So you will do the analysis as to the felonious assault first, then consider the mitigating factor. If you find him guilty of felonious assault, consider the mitigating factor of provocation, etc.
 {¶ 31} "Now, the purpose of submitting the lesser offense if the evidence warrants it, you may find the defendant guilty of the offense lesser than that charged in the indictment; however, not withstanding this right, it is your duty to accept the law as it is given to you. And if the facts and the law warrant a conviction of the offense charged in the indictment, namely felonious assault, then it is your duty to make such a finding uninfluenced by your power to find a lesser offense.
 {¶ 32} "This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent the failure of justice if the evidence fails to prove the original charge but does justify a verdict of the lesser charge.
 {¶ 33} "* * *
 {¶ 34} "Count 2 of the verdict form reads the same [i.e., "We the jury find the defendant * * *], [sic] there's a space to make the determination whether the defendant is guilty or not guilty of felonious assault as charged in count 2 and then according to the instructions that I have just given you, if you find the defendant guilty beyond a reasonable doubt of felonious assault and you also find beyond a reasonable doubt the provocation exists, the mitigating factor, then you may consider the lesser offense of aggravated assault and enter your finding, either guilty or not guilty, of the lesser offense."
 C. {¶ 35} Because defense counsel did not object to the jury instructions, we must determine whether to apply the plain error doctrine. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "When a court of appeals engages in a plain-error analysis, it must conduct a complete review of all relevant assignments of error in order to determine whether a manifest miscarriage of justice has occurred that clearly affected the outcome of the trial." State v.Hill (2001), 92 Ohio St.3d 191, syllabus. "The plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. State v. Cooperrider (1983), 4 Ohio St.3d 226,227, 4 OBR 580, 581, 448 N.E.2d 452, 453. The application of the rule is to prevent manifest injustice. Id." State v. Williford (1990),49 Ohio St.3d 247, 252.
 {¶ 36} This court is under three limitations when deciding whether "to correct an error despite the absence of a timely objection at trial."State v. Barnes (2002), 94 Ohio St.3d 21, 27. First, "there must be an error, i.e., a deviation from a legal rule." Id. (Citations omitted.) Second, "the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings." Id. (Citations omitted.) Third, "the error must have affected `substantial rights[,]'" or, in other words, the trial court's error must have affected the outcome of the trial." Id. (Citations omitted.)
 D. 1. {¶ 37} We hold that the jury instructions were not in error and we therefore overrule Jones's plain error argument.
 {¶ 38} Jones relies on State v. Thomas, in which the Ohio Supreme Court held that, "[a] jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense." (1988), 40 Ohio St.3d 213, paragraph three of the syllabus.
 2. {¶ 39} When this court reviews a jury charge, that charge "must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake County MemorialHosp. West (1990), 53 Ohio St.3d 202, 208.
 {¶ 40} Here, as Jones points out, the court did instruct the jury that "if you find that the State failed to prove beyond a reasonable doubt all the essential elements of felonious assault, then your verdict must be not guilty of that offense and in that event, you will continue your deliberations to decide whether the State proved beyond a reasonable doubt all the essential elements of the lesser offense of aggravated assault. [Emphasis added.]" That instruction, taken alone, certainly could suggest that the jury was instructed first to consider felonious assault and second to consider aggravated assault.
 {¶ 41} That instruction, however, is part of a larger jury charge. Later in the instructions, the court explained at length the requirement of a mitigating factor necessary to find Jones guilty of aggravated assault. The gist of the instruction was that, if the jury found all of the elements of felonious assault, but also found that a mitigating factor existed (provocation), then the jury was to consider whether the provocation required finding Jones guilty of the lesser offense of aggravated assault.
 {¶ 42} Therefore, the jury instruction, read as a whole, does not constitute an "acquittal first" instruction. The court did not err. We need not answer the state's argument that the aggravated assault charge should not have been given in the first place. We therefore hold that the trial court's jury instructions do not constitute plain error. Assignment of error number two is not well taken.
 V. Third Assignment of Error {¶ 43} "Assignment of Error III: Trial counsel's deficient representation on several important issues denied Joseph Jones of his constitutional right to effective assistance of counsel."
 {¶ 44} Jones argues that his counsel was ineffective at trial for failure to object to the jury instructions and therefore waived Jones's right to seek appellate review. Because we hold that the jury instructions were not improper, this assignment of error is moot.
 VI. {¶ 45} We therefore overruled Jones's assignments of error and affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and DIANE KARPINSKI, J., CONCUR.