OPINION
{¶ 1} This is an appeal from the judgment of the Allen County Court of Common Pleas which found in favor of Defendant-appellees, Seth A. Rosenberg, M.D. ("Rosenberg"), Robert Baugh, M.D. ("Baugh"), and their employer Premiere Health Services Inc. in a lawsuit filed by Plaintiff-appellant, Kelli J. Hale ("Hale") and her family.
 {¶ 2} The parties do not differ as to the following relevant set of facts. On July 30, 1999, Hale's obstetrician, Dr. Kahn delivered Hale's son at St. Rita's Medical Center without complications. On August 8, 1999, Hale presented to the Emergency Department ("E.D.") of the Putnam County Ambulatory Care Center and was seen by Rosenberg. According to the E.D. chart, Hale reported that she was eight days postpartum, had the worst headache of her life, had had two previous headaches since delivery, had photophobia and had nausea with no vomiting. Hale further indicated that she had no history of trauma to the head or hypertension. Upon physical examination, the E.D. chart indicated that Hale's blood pressure was 156/95. Rosenberg ordered a CT scan and diagnosed Hale with acute cephalgia (headache) and sinusitis. Hale was given a painkiller and an antibiotic before she left the hospital and was given a prescription for more painkillers and a nausea combatant. Hale was discharged with instructions to be rechecked in three or four days if there was no improvement and sooner if there was significant worsening despite intervention.
 {¶ 3} On August 9, 1999, Hale was brought to the Putnam Ambulatory Care Center by EMS after her husband, Shane, reported that when Hale was getting in the bathtub; she became dazed, rubbed her fingers together, shook all over and rolled her eyes back in her head. Shane also reported that the episode lasted for a minute or so and that she then became confused, had a severe headache and responded inappropriately. Baugh treated Hale when she presented at the E.D. The details of her visit to the E.D. on August 8, 1999, were reprinted on the August 9, 1999 E.D. chart, as were the details of Shane's account as described above. The E.D. chart also noted that Hale had a history of migraine headaches but that the present one was much more severe, that she had had an epidural with her pregnancy, and that she had no history of neurological problems or herpes simplex infections. Upon physical examination, the emergency room chart indicated that Hale's blood pressure was 172/99. Baugh also noted that her reflexes were hyperactive in her lower extremities. Baugh further noted that Hale was moaning with pain and shaking her head from side to side and crying, but was able to answer some questions.
 {¶ 4} Noting that he was considering severe cephalgia with mental status change, possible seizure, subarachnoid hemorrhage and possible encephalitis (inflammation of the brain), Baugh ordered a CT scan, blood tests, urinalysis, chest x-ray and a cardiac monitor. While in the E.D, Hale's blood pressure increased to 190/115 and she was given medication to lower her blood pressure and for the pain. As a result, Hale's blood pressure lowered to 140/90. Unable to make a concrete diagnosis, Baugh called Dr. Murray, the physician filling in for Hale's general practitioner, and Dr. Lin, the neurologist on call. Determining that a lumbar puncture was required to rule out encephalitis and that the E.D. facilities were limited, Hale was transported to the Intensive Care Unit at St. Rita's Medical Center for further testing.
 {¶ 5} Over the next week and a half, Hale was seen by among others, Dr.Lin and Dr. Ioannidis (neurology), Dr. Ellis (infectious diseases) and Dr. Kahn. Thereafter, Hale suffered a series of seizures and strokes and slipped into a coma. She later awoke and as a result of her illness, is now quadriplegic.
 {¶ 6} On June 12, 2002, Hale and her family filed a complaint asserting medical malpractice against Rosenberg, Baugh, Premiere Health Services, St. Rita's Medical Center, Kahn and his group OB/GYN Specialties of Lima, Lin, Ellis and his group, Infectious Disease, Inc., and Iaonnidis and his group, Lima Neurological Associates. Hale later settled with or dismissed all of the defendants except for Lin, Rosenberg and Baugh. A trial was held during which Lin settled with Hale. Consequently, the trial court made the following instruction,
Dr. Lin is no longer in this case. You are not to speculate asto his absence or infer anything from the fact that he is nolonger in this case. The defendants, Dr. Rosenberg and Dr. Baugh;and Premiere Health Care Services, Inc. remain and you are tocontinue to consider this case as it relates to them only.
 {¶ 7} At trial, Hale argued that Rosenberg and Baugh failed to differentially diagnose[1] Hale with postpartum preeclampsia and/or eclampsia (together PE/E) and failed to presumptively treat her with magnesium sulfate, an anti-seizure medication, which led to her ultimate brain injury and related paralysis. Specifically, Hale argued that any life-threatening illness which appears on the differential diagnosis should be treated presumptively and/or the patient should be admitted if the diagnosis of life-threatening illness cannot be ruled out.
 {¶ 8} Preeclampsia is a disease which inflicts pregnant or recently postpartum women. Women with preeclampsia generally have among others, one or more of the following symptoms; high blood pressure, headache, photophobia, nausea, and significant protein in the urine. If left untreated, seizures may occur. Once a seizure has occurred, the condition is called eclampsia and the condition can become life-threatening. Rosenberg and Baugh agree with the above general description of PE/E. However, they claim that these symptoms are not restricted to PE/E, that post-partum PE/E is rare and that rather than suffering from PE/E, Hale had a condition called postpartum cerebral angiopathy which could present with many of the same symptoms of PE/E but would not have been treatable with Magnesium Sulfate and may not have been treatable at all.
 {¶ 9} At trial, the parties presented testimony from several expert witnesses. The main points of contention were related to the ease or difficulty of diagnosing PE/E, whether PE/E is likely to occur as late as eight days post partum, whether Hale had either postpartum PE/E or postpartum cerebral angiopathy, and whether Rosenberg and Baugh fell below the standard of care required by an emergency room physician for failing to presumptively treat Hale for PE/E.
 {¶ 10} At the close of the evidence, the jury was instructed that they were to determine whether Rosenberg and Baugh fell below the standard of care required for an emergency room physician. Thereafter, the jury was given the following instruction:
If you find that either or both Defendant were negligent thenyou will proceed to decide by the greater of the evidence whethersuch negligence was the proximate cause of plaintiff's injuriesand, if so, what is the extent of her damages.
 {¶ 11} The jury returned a verdict in favor of the defendants specifically finding that they did not find either defendant negligent. Hale now appeals asserting five assignments of error.
 First Assignment of Error The trial court erred in not permitting Plaintiff's expert totestify to the standard of care of emergency roommedicine.[2]
 {¶ 12} A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. Scott v. Yates (1994),71 Ohio St.3d 219, 221. In this case, Hale argues that one of her expert witnesses, Dr. Giles, should have been able to testify as to the standard of care of an emergency room physician. However, during his deposition, Dr. Giles made the following statements;
Well, I mentioned earlier that while, from the standpoint oftraining emergency room physicians, I feel strongly that heshould have considered the diagnosis of preeclampsia. I feel thatthe testimony would best come from an expert practicing emergencyroom medicine on a regular or daily basis. * * * [I]n general, Ithink standard of care issues are best addressed by people whoare in the same specialty on a daily basis. I don't think — Iguess what I am saying is, while I don't think my opinion wouldbe disqualified I think I have credentials that would allow me toexpress such an opinion — I'm saying that I think it's best doneby someone who practices in the same field.
 {¶ 13} While, based on these statements, we think that the trial court could have allowed Dr. Giles to testify as to the standard of care of an emergency room physician, we cannot find that the trial court abused its discretion by disallowing Dr. Gile's testimony as to that standard of care, specifically since Dr. Giles only teaches gynecology and obstetrics to emergency room physicians and does not instruct emergency room physicians on the correct course of action to take when several differential diagnosis have been made. However, even had the trial court erred in not allowing this testimony, we cannot find that Hale would be prejudiced since she elicited favorable testimony from another of her expert witnesses regarding the standard of care of an emergency room physician. Therefore, Hale's first assignment of error is overruled.
 Second Assignment of Error The trial court erred in permitting improper comparisonsbetween non-party doctor's and defendant doctors to show that theDefendant doctors complied with the standard of care.
 {¶ 14} Hale asserts that the trial court erred in allowing Rosenberg and Baugh's counsel to attempt to establish the standard of care of an emergency room physician by comparing Rosenberg and Baugh's actions to those of non-party later-treating doctors in his closing argument. This court has previously stated the following, "We recognize that counsel generally have been accorded wide latitude in making closing arguments to the jury, so long as they confine their comments to evidence which has been produced and, in their zeal as advocates, do not exceed the bounds of propriety." Bashore v. AdiaTemporary Services (Dec. 18, 1996), Shelby App. No. 17-96-9 at *3, citing Jones v. The Macedonia-Northfield Banking Co.
(1937), 132 Ohio St. 341. Moreover, regulation of counsel's statements in closing arguments is within the sound discretion of the trial court and should not be overturned absent an abuse of that discretion. Golamb v. Layton (1950), 154 Ohio St. 305.
 {¶ 15} In his closing argument, Rosenberg and Hale's counsel argued that it was reasonable that Rosenberg and Baugh did not diagnose Hale with PE/E since many other later-treating doctors failed to do so.[3] Hale argues that counsel did so in an attempt to show that since these non-party, non-emergency room doctors did not diagnose Hale with PE/E then Rosenberg and Baugh did not violate the standard of care. However, after reviewing the statements complained of in context, it is clear that counsel was speaking to causation rather than standard of care by trying to establish that Hale may never have had PE/E.
 {¶ 16} Furthermore, Hale has consistently argued that determining the standard of care hinges on whether Rosenberg and Baugh as emergency room physicians should have placed PE/E on the differential diagnosis and presumptively treated Hale as if she had these conditions. That said, it is irrelevant in making this determination whether or not subsequent non-emergency room doctors ultimately diagnosed Hale with eclampsia especially since the jury was instructed to evaluate Rosenberg and Baugh under "the standard of care of an emergency room physician" and counsel did not represent that any of these other physicians had any knowledge regarding the standard of care required by emergency room physicians.
 {¶ 17} Finally, we note that while Hale argues that Rosenberg and Baugh's counsel should not have compared Rosenberg and Baugh to later-treating physicians, Hale's counsel in closing argument mentioned how many of the later-treating doctors diagnosed PE/E. As a result, even if it was error for Rosenberg and Baugh's counsel to make the above mentioned statements, we cannot find that Hale was prejudiced since her counsel made similar comparisons in his closing arguments which supported her contentions. Consequently, we cannot find that the trial court abused its discretion in failing to strike these statements from Rosenberg and Baugh's closing arguments.
 {¶ 18} Hale also argues that Rosenberg and Baugh's counsel's statement in closing argument relating to the failure of several named non-party, non-emergency room doctors to diagnose eclampsia on their "first visits" with Hale demonstrated an attempt to establish a standard of care for an emergency room doctor. While we tend to agree with Hale's characterization of this statement, we cannot find that the trial court abused its discretion in failing to strike this single statement since Hale elicited similar testimony during trial from Dr. Kahn, a non-party, non-emergency room doctor, who stated that Rosenberg and Baugh should have diagnosed Hale with PE/E and referred her to him. Accordingly, we cannot find that a statement such as the one made by Rosenberg and Baugh's counsel is any more prejudicial than the testimony elicited from Dr. Kahn particularly since the jury was advised that closing statements were not to be considered as evidence.
 {¶ 19} Based on the foregoing, Hale's second assignment of error is overruled.
 Third Assignment of Error The trial court erred in not permitting Plaintiffs toadequately rebut assertions in defense counsel's closingarguments.
 Fourth Assignment of Error The trial court erred in refusing to give a subsequenttortfeasor instruction.
 {¶ 20} It is well established that a trial court should confine its instructions to the jury to the issues raised by the pleadings and the evidence. Becker v. Lake Cty. Mem. Hosp. W.
(1990), 53 Ohio St.3d 202, 208. In determining whether a portion of a jury charge is harmless or prejudicial, this court must look at the jury charge as a whole. Id. "[A] reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Id.
 {¶ 21} Hale argues that there was evidence at trial and statements made in Rosenberg and Baugh's closing argument regarding non-party subsequent-treating doctors that would require allowing him to rebut those assertions in her counsel's closing argument or through a subsequent tortfeasor instruction. Hale's proposed instruction reads in relevant part, "It is not a defense to Dr. Rosenberg or Dr. Baugh, if a later physician did not treat the patient in accordance with the standard of care * * *."
 {¶ 22} "The successive tortfeasor rule holds that the original tortfeasor is liable for the negligence of subsequent tortfeasor whose acts are necessitated by the original negligence." Traster v. Steinreich (1987), 37 Ohio App.3d 99,100, citing Tanner v. Espey (1934), 128 Ohio St. 82. In order for the doctrine to apply, there must be an originally negligent party whose acts necessitated the negligent acts or omissions of others. Traster, supra.
 {¶ 23} Assuming, arguendo, that the trial court erred in failing to give a subsequent tortfeasor instruction, any failure to give the instruction is harmless. Since the jury determined that Rosenberg and Baugh were not negligent, their acts could not have been the basis for a verdict based on the successive tortfeasor rule. See Pena v. Northeast Ohio Emergency AffiliatesInc. (1995), 108 Ohio App.3d 96, 116 (finding that failure to give instruction was harmless since the original tortfeasor was not negligent); Schmidt v. Koval, Mahoning App. No. 00CA239, 2002-Ohio-1558. Accordingly, no harm resulted from the trial court's failure to give a subsequent tortfeasor instruction or allow rebuttal testimony regarding subsequent tortfeasors. Therefore, Hale's third and fourth assignments of error are overruled.
 Fifth Assignment of Error The trial court committed prejudicial error in permittingdefendant to improperly use medical treatises during directexamination of their expert.
 {¶ 24} Hale argues that Rosenberg and Baugh's expert witness, Dr. Schelble, erroneously read from several medical treatises which he had not reviewed and were published after 1999. As to the use of treatises at trial, Evid. R. 706 states that:
Statements contained in published treatises, periodicals, orpamphlets on a subject of history, medicine, or other science orart are admissible for impeachment if the publication is eitherof the following:
 (A) Relied upon by an expert witness in reaching an opinion;
 (B) Established as reliable authority (1) by the testimony oradmission of the witness, (2) by other expert testimony, or (3)by judicial notice.
 If admitted for impeachment, the statements may be read intoevidence but shall not be received as exhibits.
 {¶ 25} Assuming arguendo, that Rosenberg and Baugh improperly used medical treatises to establish the standard of care of an emergency room physician,
[T]he erroneous admission of this testimony does not justifyreversal of an otherwise valid adjudication where substantialrights of the complaining party are not affected or the court'saction is not inconsistent with substantial justice. O'Brien v.Angley (1980), 63 Ohio St.2d 159, 164, 407 N.E.2d 490. Todetermine whether substantial justice has been done, we must notonly weigh the prejudicial effect of the error, but also, we mustdetermine whether if the error had not occurred, the trier offact would probably have made the same decision. Id. at164-165, 407 N.E.2d 490; Hallworth v. Republic Steel (1950),153 Ohio St. 349, 91 N.E.2d 690, at paragraph three of thesyllabus.
 Kilbane v. Consol. Rail Corp, Cuyahoga App. No. 82397, 2004-Ohio-134, ¶ 18. (finding that reading of scientific treatise at trial did not affect jury determination).
 {¶ 26} In this case, respective text read from the three treatises complained of were mere reiterations of evidence that had been presented over and over during the trial. Furthermore, it appears that several of Hale's contentions as to the time for contracting post-partum PE/E were substantiated further with the reading of these texts, and, upon cross-examination, Hale had Dr. Schelble read additional text from those treatises that supported her contentions. Consequently, we cannot find that the reading of these treatises resulted in substantial injustice or that the jury determination was affected. Therefore, Hale's fifth assignment of error is overruled.
 {¶ 27} Based on the foregoing, the judgment of the trial court is affirmed.
Judgment affirmed.
Cupp and Bryant, JJ., concur.
[1] A differential diagnosis refers to the possibilities that a doctor considers when evaluating a patient.
[2] Hale and Rosenberg argue that we should not address Hale's first, third and fifth assignments of error since Hale appealed from the denial of a Motion for New Trial and the arguments in these assignments of error were not included in her Motion for New Trial. We disagree with this argument and will consider all of Hale's assignments of error since the Ohio Supreme Court has determined that such error is harmless and the appeal "should be treated as if arising from the final judgment." Barksdale v.Van's Auto Sales, Inc. (1988), 38 Ohio St.3d 127.
[3] Hale also argues that the evidence does not support Rosenberg and Baugh's counsel's statement that the other non-party treating doctors did not diagnose Hale with PE/E. We disagree. While most if not all of these doctors had the word eclampsia or pre-eclampsia on their charts, these charts were challenged with the assertion that the printing of these words on a chart were not diagnosis but rather were included in the referring materials.