[Cite as *Hayward v. Summa Health Sys.*, 2012-Ohio-5396.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

THERESA HAYWARD

     Appellant

     v.

SUMMA HEALTH SYSTEM AKRON
CITY HOSPITAL, et al.

     Appellees

C.A. No.     25938

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 03 2529

DECISION AND JOURNAL ENTRY

Dated: November 21, 2012

BELFANCE, Judge.

{¶1}     Plaintiff-Appellant Theresa Hayward appeals from the judgments of the Summit County Court of Common Pleas.  For the reasons set forth below, we affirm in part, reverse in part, and remand for a new trial.

I.

{¶2}     Following bouts of diverticulitis, Ms. Hayward elected to have a portion of her sigmoid colon removed in an attempt to remedy the problem.  On October 10, 2007, Defendant-Appellee Dr. Michael Cullado, M.D., and Defendant-Appellee Dr. Steven Wanek, M.D., a fifth-year surgical resident employed by Defendant-Appellee Summa Health System ("Summa"), performed the partial colectomy on Ms. Hayward.  In the days following the surgery, Ms. Hayward developed weakness and loss of sensation in her left leg.  Following a neurology consult by Dr. Robert Lada, M.D., Dr. Lada determined that Ms. Hayward suffered a nerve injury to the left femoral nerve during the surgery. After conducting a differential diagnosis as to

the cause of the nerve injury, Dr. Lada concluded that the injury occurred due to a prolonged compression of the nerve during surgery. He further concluded that, because there was no other evidence of the typical causes of femoral neuropathy,[1] the nerve injury was likely secondary to a retractor injury. The retractor in this case, a Bookwalter retractor, was used so that the anatomical structures at issue could be accessible and other structures not involved in the surgery could be held out of the way so as not to be damaged or compromised during the surgery. Ms. Hayward was discharged from the hospital on October 26, 2007. Four months later, in the discharge summary dictated by Dr. Wanek and signed by Dr. Cullado, the doctors also indicated that the neuropathy was likely secondary to a retractor injury.

{¶3} Prior to the surgery, Ms. Hayward had no problems with weakness or sensation in her leg and had no difficulty walking. Upon discharge, Ms. Hayward had to use a wheelchair to leave the hospital. Over time and many months of physical therapy, Ms. Hayward progressed to being able to walk with assistance of a walker, and finally with only the assistance of a cane. Nevertheless, Ms. Hayward continues to have problems with her left leg; she cannot stay in one position for prolonged periods of time and is most comfortable when lying down. Experts believe it is statistically unlikely that Ms. Hayward's condition will dramatically improve, that her injury is likely permanent, and that she will not be able to find work given her physical limitations and skill set.

{¶4} On March 31, 2009, Ms. Hayward filed a complaint against Summa, Dr. Cullado, Dr. Spear, Advanced Urology Associates, LLC, Dr. Wanek, Dr. Reedus, and several John and Jane Doe Defendants alleging that the Defendants were negligent in providing medical care to

---

[1] Common causes of femoral nerve injury, also known as femoral neuropathy include preexisting weakness, diabetes or retroperitoneal hematoma. After conducting tests and examining Ms. Hayward, Dr. Lada eliminated these possible causes.

Ms. Hayward, that they deviated from the standard of care, that as a proximate result of the negligence they caused injury and pain and suffering to Ms. Hayward, and that as a result Ms. Hayward has incurred numerous expenses and lost wages and earnings. Subsequently, Ms. Hayward filed motions pursuant to Civ.R. 41(A)(1) to dismiss Defendants Dr. Spear, Dr. Reedus, and Advanced Urology Associates, LLC.

{¶5} The matter proceeded to a jury trial. The jury concluded that Dr. Cullado and Summa were not liable, that Dr. Cullado and Summa by and through Dr. Wanek were not negligent in the care and treatment of Ms. Hayward, and that they did not cause injury to Ms. Hayward. Ms. Hayward filed a motion for judgment notwithstanding the verdict ("JNOV") and a motion for a new trial. Both were subsequently denied by the trial court. Ms. Hayward has appealed, raising five assignments of error for our review. Her assignments of error will be addressed out of sequence to facilitate our review.

II.

ASSIGNMENT OF ERROR III

THE COURT SHOULD HAVE GRANTED APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

{¶6} Ms. Hayward asserts in her third assignment of error that the trial court erred in denying her motion for JNOV because the evidence was insufficient to support a defense verdict. We do not agree.

{¶7} "[M]otions for directed verdict and for JNOV present questions based on the sufficiency of the evidence * * * ." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 28. A JNOV motion pursuant to Civ.R. 50(B) presents questions of law. *Id.* at ¶ 25.

> [Thus,] [a]s with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a JNOV de novo. JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and

presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party. If reasonable minds could reach different conclusions, the motion must be denied.

(Internal quotations and citations omitted.) *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. No. 10CA0138-M, 2011-Ohio-6201, ¶ 8.

**{¶8}** "In order to prove medical malpractice, the plaintiff has the burden to prove, by a preponderance of the evidence, that the defendant breached the standard of care owed to the plaintiff and that the breach proximately caused an injury." *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 182 Ohio App.3d 768, 2009-Ohio-2460, ¶ 11 (9th Dist.). "A medical-malpractice claim requires the plaintiff to prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." (Internal quotations and citations omitted.) *Id.*

**{¶9}** In the instant matter, Ms. Hayward's expert, Dr. William Irvin, M.D., testified that Drs. Cullado and Wanek fell "below the accepted standards of care * * * []" and that doing so resulted in Ms. Hayward's neuropathy. He testified that he believed that "the cause of [Ms. Hayward's] injury came from compression of the femoral nerve with a lateral retractor blade[]" that was inappropriately placed. He also stated that it was impossible to suffer an injury to the femoral nerve as Ms. Hayward had suffered without improper placement of the retractor. However, the Defendants' expert, Dr. Peter Muscarella II, M.D., testified that he did not believe the surgeons "deviated from the standard of care." In addition, although there were no medical records pertaining to the use or placement of the retractor, he testified that he was "confident that this surgeon * * * carefully placed the retractor when he did the operation because everything else that he did during the operation was careful and thoughtful with the aim of minimizing complications for the patient." We acknowledge that Dr. Lada opined that the injury was due to

prolonged nerve compression and Dr. Cullado and Wanek indicated that the injury was likely caused by the use of the retractor in their discharge summary. Dr. Cullado also acknowledged at trial that the injury most likely correlated to the use of the retractor. In addition, the bulk of Dr. Muscarella's opinions were made when he was unaware at trial that Dr. Cullado and Dr. Wanek had indicated that the injury was likely caused due to the retractor. Nonetheless, Dr. Muscarella continued to maintain that the doctors were not negligent even though he did not address or explain how Ms. Hayward could suffer a retractor injury absent a breach in the standard of care. However, these issues pertain to the weight of the evidence and not its sufficiency. The record is clear that at no point does Dr. Muscarella acknowledge or state that he believed that the surgeons were negligent or failed to meet the standard of care.

{¶10} Viewing the evidence in a light most favorable to the Defendants, and without evaluating credibility, there was evidence by which a jury could have concluded that the Defendants were not liable, given that there was expert testimony that there was no deviation from the standard of care and that the injury was not caused by the surgeons' negligence. *See Segedy*, 2009-Ohio-2460, at ¶ 11. Accordingly, Ms. Hayward's JNOV motion was properly overruled. In light of the foregoing, we overrule her third assignment of error.

## ASSIGNMENT OF ERROR V

THE COURT ERRED IN INSTRUCTING THE JURY ON REMOTE CAUSE.

{¶11} Ms. Hayward asserts in her fifth assignment of error that the trial court erred in instructing the jury on remote cause. We agree.

{¶12} "A trial court must give jury instructions that correctly and completely state the law." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 32. However, "[i]t is well established that the trial court may not instruct the jury if there is no evidence to support an

issue." *Pesek v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 498 (2000). "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West*, 53 Ohio St.3d 202, 208 (1990).

{¶13} The trial court gave the following causation instruction:

Now, to recover, the plaintiff must not only prove negligence, which has been defined for you, but the plaintiff must also prove that the negligent act was the proximate cause of plaintiff's injuries.

Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces the injury and without which it would not have occurred.

Proximate cause occurs when the injury is the natural and foreseeable result of the act or failure to act.

A person is not responsible for damages to another if his negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being a natural or probable cause of any damage.

{¶14} Ms. Hayward does not complain that the above is an inaccurate statement of the law; instead, she claims that the facts of the instant case did not warrant a remote cause instruction. We note that Ms. Hayward brought her concern about the instruction to the trial court's attention before the instructions were presented to the jury.

{¶15} In light of the testimony at trial, we agree with Ms. Hayward that an instruction on remote causation was not appropriate in the instant matter. Assuming that the Defendants breached the standard of care, there was substantial evidence to support the conclusion that the injury was a foreseeable result of the Defendants' negligence. There was overwhelming evidence that Ms. Hayward's injury was connected to the use of the retractor. Further, the testimony as a whole indicated that the type of injury Ms. Hayward sustained tends to occur when a surgeon improperly places the retractor. While the Appellees provided ample testimony

that the standard of care was not breached, they did not provide much, if any, testimony on an alternate theory of causation, let alone evidence that Appellees' negligence would have been a remote cause of Ms. Hayward's injury. *See Pesek v. Univ. Neurologists Assn.*, 87 Ohio St.3d at 499 ("The trial court's instruction would have been appropriate had there been testimony that acceptable alternative methods existed for treatment of Caitlin's condition. There were, however, no acceptable alternative methods of treatment.")

{¶16} The discharge summary, which was dictated by Dr. Wanek and signed by Dr. Cullado, concludes that Ms. Hayward "most probably suffered a femoral neuropathy likely secondary to a retractor injury." Dr. Cullado testified that "[w]hen we went through the whole process and the entire workup and the data that we had to bear at that point in time, our collective conclusion was that [the injury] was most likely correlated with the use of the retractor." In addition, Dr. Cullado testified that "if you improperly place the retractors you're increasing the risks of an injury and the manner in which you improperly place them would relatively increase or decrease the risk of the injury." Ms. Hayward's expert, Dr. Irwin, testified that he believed that "the cause of [Ms. Hayward's] injury came from compression of the femoral nerve with a lateral retractor blade[]" that was inappropriately placed. From the testimony it can also be inferred that reasonably prudent surgeons are aware that improperly placing the retractor can cause femoral neuropathy. Further, there was undisputed testimony that the injury was not caused by diabetes, a hematoma, or cutting or suturing the nerve, all of which could have caused Ms. Hayward's neuropathy. From the evidence in the record, we can only conclude that an ordinarily prudent surgeon should have reasonably anticipated that Ms. Hayward could have sustained a femoral neuropathy from the improper placement of the retractor. *See Jeanne v.*

*Hawkes Hosp. of Mt. Carmel*, 74 Ohio App.3d 246, 252 (10th Dist.1991). Accordingly, a remote cause instruction was not appropriate. *See id.* at 252-253; *see also Pesek* at 499.

{¶17} Further, in light of the fact that an instruction on remote causation was so clearly not warranted, *Pesek* at 499, and because there is evidence that the instructions did confuse the jury, we conclude that "the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker,* 53 Ohio St.3d at 208. Despite the fact that the jury interrogatories indicated that the jury should only complete interrogatory number three, which dealt with causation, *if* the jury concluded that one of the defendants was negligent, the jury completed interrogatory number three anyway. Thus, the jury considered causation and could have confused the issue of the breach of the standard of care with remote causation. While there could be another explanation for this confusion, it nonetheless evidences that the jury was confused. In light of all of the above, we conclude that the jury instruction was unwarranted and that a new trial is required. *See Pesek* at 499 (concluding that, when there was no evidence to support the instruction, a new trial was required). We sustain Ms. Hayward's fifth assignment of error.

ASSIGNMENT OF ERROR I

THE JURY'S VERDICT IN THIS MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR II

THE COURT ERRED IN ALLOWING THE ADMISSION OF, AND ARGUMENT CONCERNING, CONSENT FORMS.

ASSIGNMENT OF ERROR IV

THE COURT SHOULD HAVE GRANTED APPELLANT'S MOTION FOR A NEW TRIAL.

{¶18} Ms. Hayward argues in her first assignment of error that the verdicts were against the manifest weight of the evidence. She asserts in her second assignment of error that the trial court erred in allowing argument and testimony concerning the surgery consent form and in the admission of the form. Ms. Hayward argues in her fourth assignment of error that the trial court erred in denying her motion for a new trial. Because we conclude that these assignments of error are rendered moot by our resolution of Ms. Hayward's fifth assignment of error, we decline to address these assignments of error. *See* App.R. 12(A)(1)(c).

III.

{¶19} In light of the foregoing, we overrule Ms. Hayward's third assignment of error, sustain her fifth assignment of error, and decline to address the remaining assignments of error because they are moot. Thus, we affirm the Summit County Court of Common Pleas' ruling on Ms. Hayward's motion for a JNOV, reverse the jury verdicts, and remand the matter for a new trial.

Judgment reversed in part,<br>
affirmed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JACK MORRISON, JR., THOMAS R. HOULIHAN and VICKI L. DESANTIS, Attorneys at Law, for Appellant.

DOUGLAS G. LEAK, Attorney at Law, for Appellee.

MICHAEL J. HUDAK, Attorney at Law, for Appellee.