OPINION
{¶ 1} Defendant-appellant, Calvin J. Horton, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated murder, kidnapping, abuse of a corpse, obstructing justice, and evidence tampering. For the following reasons, we affirm.
 {¶ 2} According to the state's evidence, in September 2001, James Conway solicited Michael Arthurs and Shawn Nightingale to kill Andrew Dotson because Dotson had been a witness to a shooting involving Conway and defendant. Arthurs and Nightingale agreed to kill Dotson and planned to do the killing during a trip to West Virginia. Arthurs and Nightingale drove to West Virginia with Dotson; however, Arthurs and Nightingale did not follow through with the plan to kill Dotson.
 {¶ 3} While they were in West Virginia, Nightingale picked up Soma and "purple football" pills for Dotson because Dotson "liked to take pills."[1] After voluntarily ingesting these pills, Dotson "passed out."[2]
 {¶ 4} During the return trip to Ohio from West Virginia while Dotson was unconscious, Arthurs or Nightingale called Conway to inform him that they did not kill Dotson as planned. Conway then instructed Arthurs and Nightingale to meet him in Columbus, Ohio.
 {¶ 5} After meeting Conway and defendant at a designated parking lot near 3C Highway, Arthurs and Nightingale followed them to a clearing in a cornfield near Galloway Road. At the time, Conway was driving his father's pick-up truck.
 {¶ 6} At the cornfield, Conway instructed Arthurs to remove Dotson, who was still unconscious, from the vehicle that Arthurs had been driving. Conway then instructed Arthurs to choke Dotson. Arthurs placed Dotson in a headlock and feigned choking him. Since Dotson was still breathing after Arthurs choked him, Conway instructed Arthurs to step on his throat. Arthurs placed his foot on Dotson's neck, but placed the weight of his body on his other foot, rather than on Dotson's neck. Arthurs ultimately was unable to follow through with Conway's instruction.
 {¶ 7} Defendant and Arthurs then pulled Dotson further into the cornfield. At this time, Dotson was alive but unconscious. After Arthurs returned to the vehicles, defendant and Nightingale undressed Dotson down to his boxer shorts and placed his clothes into a plastic bag. Defendant then brought the plastic bag back to the vehicles.
 {¶ 8} Conway retrieved a pickax from the vehicle that he was driving. While Arthurs, Nightingale, and defendant remained near their vehicles, Conway went over to where Dotson was lying. While Conway was with Dotson, two thuds were heard. Conway then returned to the group, stuck the pickax into the ground to remove blood, removed the metal pick from the tool's handle and placed it into the bag that contained Dotson's clothing. The handle of the pickax was then placed in the back of the truck that Conway was driving.
 {¶ 9} Defendant put the bag into the vehicle that Arthurs had been driving. Then defendant removed a bag of lime from the vehicle that Arthurs had been driving and took it to the place where Dotson's body was lying. Defendant returned to the vehicles with an empty bag of lime and placed it into the back of the truck that Conway was driving.
 {¶ 10} Arthurs and Nightingale left the cornfield and later met defendant and Conway at Conway's house. Subsequently, Conway, Nightingale, and defendant decided to go to a bar. Arthurs, however, asked to be dropped off at his cousin's house. After arriving at his cousin's house, Arthurs threw the bag containing Dotson's clothing and the metal pick into a trash can behind his cousin's house. Arthurs stayed overnight at his cousin's house.
 {¶ 11} The following morning Arthurs met with defendant, Conway, and Nightingale, who took Arthurs shopping for new clothes since his old clothing potentially could be recovered as evidence. After buying new clothes, Arthurs gave his old clothing to Conway who agreed to destroy them.
 {¶ 12} In October 2001, the body of a male, which was later identified as the remains of Andrew Dotson, was discovered in a cornfield near Galloway Road in Franklin County. At the time of discovery, Dotson's body was partially decomposed, was clothed only in boxer shorts, and was partially covered with a white powdery residue. There were also two wounds to the body's torso. A coroner determined that Dotson died as a result of these two sharp instrument wounds to his trunk.
 {¶ 13} At some point after Dotson's murder, Arthurs was indicted for offenses unrelated to the murder. Arthurs consented to a plea agreement relating to his involvement in Dotson's murder, as well as the other unrelated offenses. Arthurs also cooperated with law enforcement authorities in an undercover operation concerning the Dotson murder investigation.
 {¶ 14} Sometime around April 2002, after claiming he had information about Dotson's murder, Ronald Trent, who at that time was an inmate, met with an assistant prosecutor and law enforcement authorities. According to Trent, Conway, who was Trent's cousin and who was incarcerated with Trent, admitted to killing Dotson. Conway solicited Trent's assistance in a plan to kill Arthurs, as well as witnesses to other crimes in which Conway was involved. Conway, defendant, and Nightingale were supposedly concerned that Arthurs would disclose to law enforcement authorities information about Conway's involvement in a prior robbery in Chillicothe, Ohio. According to Trent, in addition to killing Arthurs, there was also a plan to have Trent kill Nightingale, but this plan was later abandoned.
 {¶ 15} Posing as a "hit man," Trent became a confidential informant for police. While under police surveillance, Trent contacted defendant, whom Conway had directed to assist Trent. Defendant met with Trent on several occasions, identified witnesses whom Conway wanted murdered, and provided Trent with weapons for the purpose of killing witnesses. Additionally, defendant provided money and cocaine to Trent as consideration for the proposed killings.
 {¶ 16} According to Trent, defendant also discussed details about Dotson's murder, including the plan to have Arthurs and Nightingale kill Dotson in West Virginia, the stabbing of Dotson with a pickax, and defendant's placing of lime on Dotson's body. Defendant also admitted to Trent that he began to dig a hole to bury Dotson's body, but this plan was abandoned when others who were involved in Dotson's murder did not want to follow through with defendant's plan to bury the body.
 {¶ 17} By indictment filed June 7, 2002, defendant was charged with aggravated murder with three death penalty specifications, kidnapping, possessing criminal tools, abuse of a corpse, obstructing justice, and tampering with evidence. Defendant pled not guilty to these charges. A jury trial was later held.
 {¶ 18} At the conclusion of the culpability phase of trial, the jury found defendant guilty of aggravated murder with two death penalty specifications, kidnapping, abuse of a corpse, obstructing justice, and tampering with evidence. The jury, however, found defendant not guilty of possessing criminal tools. After considering mitigation evidence, the jury recommended a sentence of life imprisonment without the possibility of parole. By judgment entry filed June 5, 2003, the trial court sentenced defendant to life imprisonment without the possibility of parole consecutive to an additional 21 years of imprisonment.
 {¶ 19} From this judgment, defendant appeals and assigns the following errors:
1. The convictions for complicity in aggravated murder and kidnapping were against the manifest weight of the evidence.
2. The convictions for complicity in aggravated murder and kidnapping were not supported by legally sufficient evidence.
3. The trial court erred in admitting a vast quantity of other acts testimony over repeated defense objections and allowing the other acts evidence to be argued as proof of appellant's mental state eight months earlier.
4. The trial court erred in charging the jury over objection that the jury could consider the appellant's involvement in a subsequent plan to kill Mike Arthurs as evidence of his guilt as an accomplice in the present case.
5. The trial court gave an inaccurate and misleading charge of law as to complicity as it pertains to aggravated murder.
 {¶ 20} Defendant's first and second assignments of error assert that defendant's convictions for complicity in kidnapping and aggravated murder were against the manifest weight of the evidence and supported by legally insufficient evidence. Because these assignments of error are interrelated, we will jointly address them.
 {¶ 21} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether the fact finder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied, 79 Ohio St.3d 1451; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, the Supreme Court of Ohio stated:
The question for the reviewing court [in a manifest-weight claim] is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."
Id. at ¶ 77, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. See, also, Thompkins, at 387.
 {¶ 22} Comparatively, when an appellant challenges his or her conviction as not being supported by sufficient evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find beyond a reasonable doubt the essential elements of the offense. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89; Thompkins, at 386; Conley, supra.
 {¶ 23} R.C. 2905.01 defines kidnapping, in relevant part, as follows:
(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(2) To facilitate the commission of any felony or flight thereafter;
(3) To terrorize, or to inflict serious physical harm on the victim or another;
* * *
(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
(1) Remove another from the place where the other person is found;
(2) Restrain another of his liberty;
* * *
(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.
 {¶ 24} R.C. 2923.03 defines complicity, in relevant part, as follows:
(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
(4) Cause an innocent or irresponsible person to commit the offense.
* * *
(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
See, also, State v. Ensman (1991), 77 Ohio App.3d 701, 703, dismissed, jurisdictional motion overruled (1992), 63 Ohio St.3d 1409
(observing that "charging a defendant in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal"); State v. Ratkovich, Jefferson App. No. 02-JE-16, 2003-Ohio-7286, at ¶ 10 (Vukovich, J., dissenting) (observing that a court may instruct the jury on complicity where the evidence at trial reasonably supports a finding that a defendant was an aider or abettor even if defendant is charged in the indictment as a principal).
 {¶ 25} In State v. Brown, Franklin App. No. 03AP-130, 2004-Ohio-2990 (Bryant, J., concurring in part and dissenting in part), appeal not allowed, 103 Ohio St.3d 1481, 2004-Ohio-5405, this court observed:
"* * * [T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." State v. Johnson (2001),93 Ohio St.3d 240, 245-246. * * * The defendant's intent may be inferred from the circumstances surrounding the crime. Id. at 246. * * * The defendant's "`[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Id. at 245 * * * quoting State v. Pruett (1971),28 Ohio App.2d 29, 34. * * *
Id. at ¶ 73, quoting Ratkovich, at ¶ 15.
 {¶ 26} Thus, we must look to the circumstances surrounding Dotson's kidnapping and defendant's presence, companionship and conduct before and after Dotson's kidnapping to determine whether defendant supported, assisted, encouraged, cooperated with, or advised the principal in the kidnapping of Dotson.
 {¶ 27} Here, after Arthurs had by force removed an unconscious Dotson from the vehicle that Arthurs had been driving and had choked Dotson and stepped on Dotson's neck, defendant with Arthurs' assistance, pulled Dotson, who was still unconscious, further into the cornfield where Dotson was later killed. Construing this evidence in favor of the prosecution, we find that defendant supported, assisted, encouraged, and cooperated with the forceful removal of Dotson from the place were Dotson was found under circumstances that created a substantial risk of serious physical harm and, therefore, defendant was complicit in Dotson's kidnapping. Accordingly, defendant's contention that his conviction for complicity in kidnapping was based upon legally insufficient evidence is not persuasive.
 {¶ 28} Moreover, based upon this evidence, we do not find that the jury clearly lost its way in finding that defendant was complicit in kidnapping Dotson or that a greater amount of credible evidence does not support the jury's verdict. Accordingly, defendant's contention that his conviction for complicity in kidnapping was against the manifest weight of the evidence is unpersuasive.
 {¶ 29} Defendant also contends his conviction for complicity in aggravated murder was against the manifest weight of the evidence and supported by legally insufficient evidence.
 {¶ 30} Former R.C. 2903.01,[3] defining aggravated murder, provides in pertinent part:
(A) No person shall purposely, and with prior calculation and design, cause the death of another * * *.
(B) No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
* * *
(F) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.
See, also, R.C. 2901.22(A) ("[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature").
 {¶ 31} Here, defendant asserts there is no evidence that he acted with the requisite criminal intent required for aggravated murder, viz., purposely causing the death of Dotson. Defendant therefore reasons that his conviction for complicity in aggravated murder is against the manifest weight of the evidence and supported by legally insufficient evidence.
 {¶ 32} To resolve this issue we look to the circumstances surrounding Dotson's death and defendant's presence, companionship and conduct before and after Dotson's death to determine whether defendant supported, assisted, encouraged, cooperated with, or advised the principal in the aggravated murder of Dotson. See R.C. 2923.03; State v. Johnson (2001),93 Ohio St.3d 240, 245; Brown, supra, at ¶ 73.
 {¶ 33} According to the state's evidence, defendant accompanied Conway to the cornfield where Dotson was later killed. At the cornfield, after Arthurs had purportedly feigned choking Dotson and stepped on Dotson's neck, defendant and Arthurs pulled Dotson further into the cornfield where defendant and Nightingale undressed Dotson down to his boxer shorts. After Dotson was undressed, defendant retrieved Dotson's clothing. The day after Dotson's killing, defendant supported and assisted Arthurs with the purchase of new clothing so that Arthurs' old clothing could not be used as evidence. In later conversations with a confidential police informant, defendant spoke about the plan to have Dotson killed in West Virginia, and defendant related details about Dotson's murder in the cornfield. According to prosecution witnesses, defendant also stated to the confidential police informant that "if you say you are going to do something, you should do it. And if you are scared — you know, you shouldn't say you are going to do it if you are too scared to do it."[4] This statement was interpreted by one prosecution witness to indicate that defendant had knowledge of the plan to kill Dotson.[5]
 {¶ 34} Construing this evidence in favor of the prosecution, we find this evidence supports a verdict that defendant supported, assisted, encouraged, and cooperated with the principal in the killing of Dotson and that defendant purposely, and with prior calculation and design, caused the death of Dotson or, alternatively, that defendant supported, assisted, encouraged, and cooperated with the principal in purposely causing Dotson's death while committing or attempting to commit kidnapping. Accordingly, defendant's contention that his conviction for complicity in aggravated murder was based upon legally insufficient evidence is not persuasive.
 {¶ 35} Moreover, based upon the evidence, we do not find that the jury clearly lost its way in finding that defendant was complicit in aggravated murder or that a greater amount of credible evidence does not support the jury's verdict that defendant was complicit in aggravated murder. Accordingly, defendant's contention that his conviction for complicity in aggravated murder was against the manifest weight of the evidence is also unpersuasive.
 {¶ 36} Accordingly, we overrule defendant's first and second assignments of error.
 {¶ 37} Defendant's third assignment error asserts that the trial court erred when it admitted over defense objections "other acts" evidence as proof of defendant's mental state eight months earlier.
 {¶ 38} "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court."Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164, rehearing denied,40 Ohio St.3d 707; see, also, State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." Taylor, at 164. Accordingly, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably, thereby resulting in material prejudice to defendant. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶43, certiorari denied (2003), 539 U.S. 907, 123 S.Ct. 2256.
 {¶ 39} In State v. Wilkinson (1980), 64 Ohio St.2d 308, 314, the Supreme Court of Ohio stated:
It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial is inadmissible. * * * Evidence of other acts is not admissible simply because such proof demonstrates a trait, disposition, or propensity toward the commission of a certain type of crime.
 {¶ 40} Evid.R. 404(B) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
See, also, Evid.R. 403(A) (providing that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury").
 {¶ 41} In State v. Smith (1990), 49 Ohio St.3d 137, the Supreme Court of Ohio explained:
Evid.R. 404(B) is essentially an extension of Evid.R. 404(A) which is intended to preclude a prejudicial attack on a defendant's character. Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. However, Evid.R. 404(B) permits "other acts" evidence for "other purposes" including but not limited to certain enumerated issues. * * *
Id. at 140. See, also, State v. Rocker (Sept. 1, 1998), Franklin App. No. 97APA10-1341, dismissed, appeal not allowed, 84 Ohio St.3d 1448, citing Smith, supra (observing that "[t]he listed exceptions within Evid.R. 404(B) are not exclusive, and `other acts' evidence not fitting within the enumerated categories may be admissible so long as the evidence is admitted for any proper purpose other than proving the defendant's propensity to act and conformity with a particular trait of his character").
 {¶ 42} Comparatively, R.C. 2945.59 provides:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 {¶ 43} Under R.C. 2945.59, "evidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute." Smith, at 139-140.
 {¶ 44} In the first paragraph of the syllabus of State v. Broom
(1988), 40 Ohio St.3d 277, certiorari denied (1989), 490 U.S. 1075,109 S.Ct. 2089, the Supreme Court of Ohio stated:
Because R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. * * * The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. * * *
 {¶ 45} Our task upon appellate review "is to determine the probative value of the evidence adduced, and whether it was admissible to prove any of the elements mentioned in R.C. 2945.59 and Evid.R. 404(B)." Smith, at 140.
 {¶ 46} Here, we cannot find that the "other acts" evidence that the trial court admitted, over defense objections, is wholly independent of the offense of aggravated murder for which defendant was on trial. According to the state's theory, Dotson was killed because he witnessed a shooting that involved Conway and defendant and Dotson's murder was part of an overall scheme that involved killing witnesses that could potentially implicate Conway in criminal activities. Thus, the "other acts" evidence is relevant and admissible for the purpose of proving motive.
 {¶ 47} Furthermore, we cannot conclude that the probative value of the "other acts" evidence was substantially outweighed by danger of unfair prejudice, of confusion of the issues, or of misleading the jury in violation of Evid.R. 403(A). Here, it is indisputable that the "other acts" evidence was unfavorable to defendant's case; however, "the decision to exclude evidence under Evid.R. 403(A) involves more than a determination of whether the evidence is merely prejudicial or unfavorable." State v. Bowman (2001), 144 Ohio App.3d 179, 185. Rather than being merely prejudicial or unfavorable, "[t]he evidence must cause unfair prejudice, for if the term `unfair prejudice' simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid.R. 403." Id. (Emphasis sic.) Based upon our review, we cannot conclude that the trial court's admission of "other acts" evidence resulted in unfair prejudice.
 {¶ 48} Accordingly, notwithstanding defendant's contention to the contrary, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably by admitting, over defense objections, "other acts" evidence. We therefore overrule defendant's third assignment of error.
 {¶ 49} Defendant's fourth assignment of error asserts that the trial court erred when, over defense objections, it instructed the jury that it could consider defendant's involvement in a subsequent plan to kill Arthurs as evidence of defendant's guilt as an accomplice in the case at issue. Defendant's fifth assignment of error asserts the trial court gave an inaccurate and misleading charge of law concerning complicity in aggravated murder. Because defendant's fourth and fifth assignments of error are interrelated, we will jointly address them.
 {¶ 50} "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202,208, see, also, State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus, certiorari denied (1980), 446 U.S. 943, 100 S.Ct. 2169;State v. Hardy (1971), 28 Ohio St.2d 89, 92.
 {¶ 51} In his fourth assignment of error, defendant asserts the trial court erred when it gave this jury instruction:
Evidence was admitted of other acts which the defendant may have committed. You may not consider that evidence to determine whether the defendant committed any act alleged in the indictment or acted in conformity therewith.
If you find from other evidence that the defendant committed the acts charged in the indictment, then you may consider the evidence of other acts, but you are not required to do so, as bearing upon the defendant's motive, intent, plan, scheme, knowledge, absence of mistake or accident.
Testimony was introduced that defendant was part of plan to kill Mike Arthurs. You may not presume the defendant guilty from such evidence. You may, however, consider the circumstances in determining the guilt or innocence of the defendant and you may infer a consciousness of guilt regarding that evidence but you are not required to do so.
(Tr. Vol. IV, at 242-243; Jury Instructions, at 4-5.)
 {¶ 52} Defendant contends the trial court's jury charge concerning "other acts" evidence and the trial court's reference to "consciousness of guilt" in its jury charge constituted error.
 {¶ 53} As previously explained, in this case the "other acts" evidence was relevant and admissible for the purpose of proving motive. We therefore cannot conclude that the trial court erred when it instructed the jury that the "other acts" evidence could be considered "as bearing upon the defendant's motive, intent, plan, scheme, knowledge, absence of mistake or accident." Furthermore, based upon our review of the jury charge as a whole, we do not find that this portion of the jury charge probably misled the jury. See, generally, Becker, at 208; Ohio FarmersIns. Co. v. Cochran (1922), 104 Ohio St. 427, 428, paragraph six of the syllabus. Accordingly, defendant's contention of error relative to the trial court's jury charge concerning "other acts" evidence is unpersuasive.
 {¶ 54} However, defendant also contends that the trial court's reference to "consciousness of guilt" in its instruction was irrelevant to determining whether defendant was guilty of complicity in kidnapping or aggravated murder and this instruction was confusing to lay jurors.
 {¶ 55} According to the state's theory, Dotson's murder was intertwined in an overall scheme that involved killing witnesses, including Arthurs, who could potentially implicate Conway in criminal activities. Therefore, defendant's involvement in a plan to kill Arthurs was not wholly independent of Dotson's murder and, as a consequence, defendant's involvement in a plan to kill Arthurs was relevant to a determination concerning defendant's complicity in the aggravated murder and kidnapping of Dotson. See Evid.R. 401 (providing that "`relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").
 {¶ 56} Defendant's involvement in a plan to kill Arthurs, a witness to the Dotson killing and kidnapping, constitutes an effort to cover up the Dotson killing and kidnapping and, therefore, reflects a consciousness of guilt, just as a flight from justice may indicate a consciousness of guilt, State v. Eaton (1969), 19 Ohio St.2d 145, 160, judgment vacated in part, Eaton v. Ohio (1972), 408 U.S. 935, 92 S.Ct. 2857, or intimidation of witnesses may indicate a consciousness of guilt. State v. Leonard (May 21, 1993), Lawrence App. No. CA92-12, dismissed, jurisdictional motion overruled, 67 Ohio St.3d 1479. See, also, State v. Williams (1997),79 Ohio St.3d 1, 11.
 {¶ 57} Furthermore, we do not find that the trial court's jury charge concerning consciousness of guilt probably misled or confused the jury. In its charge, the trial court specifically instructed the jury that it could not presume defendant's guilt based upon defendant's involvement in a plan to kill Arthurs. Rather, the trial court instructed: "You may, however, consider the circumstances in determining the guilt or innocence of the defendant and you may infer a consciousness of guilt regarding that evidence but you are not required to do so."[6] Accordingly, defendant's contention that the court's reference to "consciousness of guilt" in its jury charge was error is not persuasive.
 {¶ 58} Defendant's fifth assignment of error asserts that the trial court gave an inaccurate and misleading charge of law concerning complicity as it pertains to aggravated murder.
 {¶ 59} At trial, defendant failed to object to the trial court's jury charge concerning complicity in aggravated murder. In State v. Underwood
(1983), 3 Ohio St.3d 12, the Supreme Court of Ohio held: "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." Id. at syllabus, approving and following State v. Long (1978), 53 Ohio St.2d 91. Because defendant failed to object to the portion of the jury charge concerning complicity and therefore waived any claim of error relative thereto, we review defendant's contention that the trial court's jury charge concerning complicity in aggravated murder was erroneous under a plain error analysis. See State v. Jackson (2001), 92 Ohio St.3d 436, 444 (observing that failure to object to jury instructions waives all but plain error), reconsideration denied, 93 Ohio St.3d 1453, motion to reopen denied (2002), 94 Ohio St.3d 1426.
 {¶ 60} In State v. Barnes (2002), 94 Ohio St.3d 21, 27, the Supreme Court of Ohio instructed:
Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
 {¶ 61} The Barnes court further instructed:
Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." * * *
Id.
 {¶ 62} In support of his fifth assignment of error, defendant parses individual sentences from the trial court's jury charge to support his contention that the charge failed to include instructions about the level of criminal intent required for complicity in aggravated murder or, alternatively, that the charge provided incorrect instructions about the requisite criminal intent required for a finding of complicity in aggravated murder.
 {¶ 63} Upon appellate review, a jury charge must be considered as a whole, rather than a review of individual sentences from a jury charge.Becker, at 208.
 {¶ 64} In its jury charge, the trial court instructed:
If you find that the defendant purposely aided, helped, assisted, encouraged or directed himself with another, in the commission of the aggravated murder, or any of the crimes charged in the indictment, he is to be regarded as if he was the principal offender, and is just as guilty as if he personally performed every act constituting the offense(s). However, the state still must prove beyond a reasonable doubt that the defendant specifically intended to cause the death of another.
(Tr. Vol. IV, at 255; Jury Instructions, at 13-14.)
 {¶ 65} Here, as stated above, the trial court's instruction did not deviate from a legal rule and properly stated the applicable law. Furthermore, based upon our review, we find the jury charge, when considered as a whole, probably did not mislead the jury concerning the requisite criminal intent required for a finding of complicity in aggravated murder or that, but for the purported error in the complicity instruction, the outcome of the trial clearly would have been otherwise.
 {¶ 66} Consequently, we cannot conclude that the trial court's instruction concerning complicity in aggravated murder constitutes plain error.
 {¶ 67} Therefore, defendant's fourth and fifth assignments of error are overruled.
 {¶ 68} For the foregoing reasons, defendant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.
[1] Tr. Vol. II, at 219.
[2] Id.
[3] R.C. 2903.01 was amended by Sub.S.B. No. 184, effective May 15, 2002. Sub.S.B. No. 184 inserted "terrorism" in division (B) and made nonsubstantive changes to division (B).
[4] Tr. Vol. III, at 236; see, also, Tr. Vol. III, at 77, 280-281.
[5] Tr. Vol. III, at 280-281.
[6] Tr. Vol. IV, 243; Jury Instructions, at 4-5.